IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION,<br>    *Plaintiff*<br><br>v.<br><br>STATE OF TEXAS THROUGH KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF TEXAS,<br>    *Defendant* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§      Case No. 1:19-CV-00876-RP |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE ROBERT PITMAN
         UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss, filed on October 2, 2019 (Dkt. 8); Plaintiff's Response, filed on October 16, 2019 (Dkt. 9); and Defendant's Reply, filed on October 23, 2019 (Dkt. 10). On April 8, 2020, the District Court referred the motion and related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I. Background

On May 31, 2019, the State of Texas enacted Texas Business & Commerce Code § 20.05(a)(5) (the "Statute"), amending the Texas Fair Credit Reporting Act. Section 20.05(a)(5) limits information that credit reporting agencies may include in an individual's credit report. Specifically, § 20.05(a)(5) states:

> (a) Except as provided by Subsection (b), a consumer reporting agency may not furnish a consumer report containing information related to:

1

\* \* \*

>  (5) a collection account with a medical industry code, if the consumer was covered by a health benefit plan at the time of the event giving rise to the collection and the collection is for an outstanding balance, after copayments, deductibles, and coinsurance, owed to an emergency care provider or a facility-based provider for an out-of-network benefit claim . . . .

Plaintiff Consumer Data Industry Association ("CDIA") is an international trade association that represents the three nationwide credit reporting agencies – Experian, Equifax, and Trans Union – and other credit reporting agencies that furnish information concerning Texas consumers. Dkt. 1 at 2. CDIA filed this lawsuit on September 9, 2019, contending that § 20.05(a)(5) is preempted by the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. CDIA requests declaratory and injunctive relief.

The State now seeks dismissal of all claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. 8 at 1.

## II. Legal Standards

**A.  Subject Matter Jurisdiction and Standing**

Federal district courts are courts of limited jurisdiction and may only exercise jurisdiction expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter

jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

In ruling on a Rule 12(b)(1) motion, the court may consider any of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). Dismissal for lack of subject matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) (quoting *Ramming*, 281 F.3d at 161).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.*

3

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced in the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III. Analysis

The State seeks dismissal of all claims based on lack of subject matter jurisdiction and failure to state a claim. Courts generally consider jurisdictional attacks before addressing other grounds for dismissal. *Ramming*, 281 F.3d at 161. In CDIA's response, it argues that its Complaint includes sufficient facts to survive the State's Motion, but requests leave to file an amended complaint should the Court find its pleadings deficient. Dkt. 9 at 2, 8 n.8.

**A. Defendant's Motion to Dismiss**

The State argues that CDIA lacks standing because it has not suffered injury in fact. Dkt. 8 at 5-6. CDIA explains that it brings this lawsuit solely on behalf of its members through associational standing. Dkt. 9 at 3 n.6.

Standing is a component of subject matter jurisdiction, and it is properly raised by a motion to dismiss under Rule 12(b)(1). *See Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 534 (5th Cir. 2016). The requirement of standing has three elements: (1) injury in fact, (2) causation, and (3) redressability. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). The injury cannot be merely "conjectural or hypothetical." *Summers v. Earth Island*

4

*Inst.*, 555 U.S. 488, 493 (2009). Causation requires that the injury "fairly can be traced to the challenged action of the defendant," rather than to "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Redressability requires that it is likely, "as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). The party invoking federal subject matter jurisdiction bears the burden of establishing each element. *Ramming*, 281 F.3d at 161.

### 1. Associational Standing

An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Participation of individual members generally is not required when the association seeks prospective or injunctive relief, as opposed to damages. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996).

The State contends that Plaintiff lacks standing because it is a trade organization that has not experienced a particularized injury in fact. Dkt. 8 at 5. The State argues that, as an organization, Plaintiff must show more than a "setback to the organization's abstract social interests." Dkt. 8 at 6 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). The State contends that Plaintiff has not alleged any impairment of its routine activities or drain on its resources, as is required for an organization to show injury in fact. *Id*. The State also argues that Plaintiff has articulated only a generalized grievance that does not amount to injury in fact. Dkt. 8 at 7. Any

"threatened injury must be certainly impending to constitute injury in fact," the State contends. *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)).

In response, CDIA argues that, in lawsuits concerning pre-enforcement of an allegedly illegal law, a plaintiff has standing when it has "alleged an actual and well-founded fear that the law will be enforced against them." Dkt. 9 at 4 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). CDIA contends that it has pled sufficient facts to allege an injury in fact on behalf of its members, including the threat of litigation by the Texas Attorney General against CDIA's members and the cost of the steps its members would have to take to come into compliance with § 20.05(a)(5). Dkt. 9 at 5, 7.

To determine whether CDIA has associational standing, the Court first analyzes whether CDIA's individual members would have standing to pursue a pre-enforcement action against the State to enjoin enforcement of the Statute. The parties disagree on whether there is an injury in fact sufficient to establish standing. The State argues that because it has not taken enforcement actions against any of CDIA's members, the purported injury is a mere generalized grievance. *See* Dkt. 8 at 7; Dkt. 10 at 6. The State's standing argument aligns closely with the issue of ripeness, which the Court addresses next. *See Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975) ("The standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention.").

### 2. Ripeness

Ripeness is a constitutional prerequisite to a court exercising subject matter jurisdiction. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative." *Id.* A declaratory judgment action is ripe for adjudication only where an actual controversy exists. *Orix Credit All., Inc. v. Wolfe*, 212

F.3d 891, 896 (5th Cir. 2000). "Declaratory judgments are typically sought before a completed injury in fact has occurred but still must be limited to the resolution of an actual controversy." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (cleaned up). An actual controversy exists "where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Orix Credit,* 212 F.3d at 896. Whether particular facts amount to an actual controversy must be addressed on a case-by-case basis. *Id*. "[T]he ripeness inquiry focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Id.* at 897 (internal quotation marks omitted). A case or controversy becomes ripe when a specific and concrete threat of litigation arises. *See id.*; *see also Shields*, 289 F.3d at 835. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

### 3. Conclusion as to Standing

CDIA seeks declaratory and injunctive relief to protect its members from the purported adverse effects that the State's enforcement of the Statute would bring. Dkt. 9 at 5, 7. Both CDIA and the State contend that enforcement of the Statute is discretionary. *See* Dkt. 8 at 8 ("CDIA has no knowledge of how the Attorney General determines what cases to pursue . . . ."); *see also* Dkt. 9 at 4-5. CDIA does not allege that the State has subjected any of its members to an enforcement proceeding under the Statute or threatened any of its members with an enforcement action. *Cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164-67 (2014) (holding that petitioners had pre-enforcement standing where the administrative agency had enforced statute against them and others similarly situated).

Whether any of CDIA's members may be subject to enforcement under the Statute depends on contingent factors, including whether CDIA's members violate the Statute, whether the Attorney General discovers the violation, and whether the Attorney General exercises its discretion to enforce the Statute. Based on these contingencies, any threat of litigation between the State and CDIA's members is too speculative at this time to constitute a specific and concrete threat of litigation between its members and the State. *See Texas*, 523 U.S. at 300; *Shields*, 289 F.3d at 835-36. Accordingly, the claim is not ripe for review.

CDIA relies on cases relating to criminal statutes and violations of the First Amendment, with a more lenient standard for standing and ripeness that allows for judicial intervention before enforcement. *See, e.g.*, *Susan B. Anthony*, 573 U.S. at 158-59, 165 (holding that threats of administrative enforcement and criminal prosecution combined to create pre-enforcement standing under circumstances presented); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (holding that, where a statute conflicts with a constitutional right and a credible threat of prosecution for a violation exists, a plaintiff "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief"); *Nat'l. Fed. of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011) ("Although various prudential standing principles have been relaxed in some First Amendment cases, this relaxation does not eliminate the distinct and independent requirement of Article III that the dispute between the parties must amount to a case or controversy.").

Because CDIA's members do not have a ripe claim for adjudication based on the current facts, the members would fail to satisfy the injury in fact element of standing. *See Warth,* 422 U.S. at 499 n.10. Because CDIA's members would not have standing to litigate on the current facts, CDIA cannot establish the elements required for associational standing. *See Hunt,* 432 U.S. at 343. Due

to lack of standing, CDIA has failed to invoke the Court's subject matter jurisdiction. *See Shields*, 289 F.3d at 835. Accordingly, CDIA's claims should be dismissed.

Because the Court finds that CDIA lacks the requisite standing to litigate its claims, the Court need not address the parties' arguments relating to preemption.

### B. Plaintiff's Request for Leave to Amend

In its response, CDIA seeks leave to file an amended complaint if the Court finds its pleadings deficient. Dkt. 9 at 2, 8 n.8. Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

Because CDIA's claim is not ripe for review, the Court does not have subject matter jurisdiction over this matter. Therefore, amendment would be futile. *See TOTAL Gas & Power N. Am., Inc., v. FERC*, 859 F.3d 325, 332, 339 (5th Cir. 2017) (affirming district court's dismissal of plaintiff's claims because claims were unripe and amendment would be futile due to lack of subject matter jurisdiction).

Additionally, CDIA has not attached a proposed amended complaint to its Response, or described any additional facts it would plead to cure the defects in its Complaint or otherwise adequately state a claim sufficient to survive a motion to dismiss. Without a proposed amended complaint, the Court is unable to assess whether amendment is warranted. *See Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant fails to apprise court of facts he would plead in amended complaint to cure any deficiencies). Accordingly, CDIA's request for leave to amend should be denied.

### IV. Recommendation

The undersigned **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss (Dkt. 8) and dismiss this case for lack of standing. The Court **FURTHER RECOMMENDS** that the District Court **DENY** CDIA leave to file an Amended Complaint, as amendment would be futile.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

### V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 22, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE