IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CONSUMER DATA INDUSTRY ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF TEXAS, *through Ken Paxton, in his official capacity as Attorney General of the State of Texas*,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 1:19-CV-876-RP |

**ORDER**

Before the Court is Plaintiff Consumer Data Industry Association's ("CDIA") Motion for Summary Judgment ("MSJ"). (MSJ, Dkt. 93). Defendant State of Texas ("Texas")[1] filed a Response, (Dkt. 96), and CDIA filed a Reply, (Dkt. 97). After reviewing the briefing, the record, and the relevant law, the Court will grant in part CDIA's Motion for Summary Judgment.

## I. BACKGROUND

### A. Procedural History

In 2019, during the 86th Regular Session, the Texas Legislature enacted Senate Bill 1037 ("SB 1037"), which amended the Texas Fair Credit Reporting Act by enacting Texas Business & Commerce Code § 20.05(a)(5) (the "Texas Statute"). Section 20.05(a)(5) "prohibits consumer reporting agencies from including certain medical debt information in consumer reports." (Joint Stip., Dkt. 93-7, at 2). Specifically, § 20.05(a)(5) states:

> (a) Except as provided by Subsection (b), a consumer reporting agency may not furnish a consumer report containing information related to:
>
> * * *

[1] CDIA sues Texas through Ken Paxton in his official capacity as Attorney General for the State of Texas.

> (5) a collection account with a medical industry code, if the consumer was covered by a health benefit plan at the time of the event giving rise to the collection and the collection is for an outstanding balance, after copayments, deductibles, and coinsurance, owed to an emergency care provider or a facility-based provider for an out-of-network benefit claim.

Tex. Bus. & Com. Code § 20.05(a)(5). Soon after the Texas Statute was enacted, CDIA—a trade association that "represent[s] consumer reporting agencies including the nationwide credit bureaus" that furnish credit information concerning Texas consumers—filed this lawsuit, asserting that the Texas Statute is preempted by the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. (CDIA Decl., Dkt. 93-1, at 1; MSJ, Dkt. 93, at 6–8). CDIA seeks declaratory and injunctive relief. (MSJ, Dkt. 93, at 30) (asking the Court to declare that the Texas Statute is "preempted in its entirety, and permanently enjoin Texas from enforcing the law").

On January 4, 2021, the State filed a Motion to Dismiss CDIA's Amended Complaint. (Mot. to Dismiss, Dkt. 41). On September 28, 2021, the Court denied the Motion to Dismiss, finding that CDIA has standing; that CDIA's claims are ripe for adjudication; that the State lacks sovereign immunity in this action; and that CDIA had plausibly alleged a claim for relief. (Order Denying Mot. to Dismiss, Dkt. 49, at 6–11). The State appealed, and the Fifth Circuit affirmed the Court's rulings on sovereign immunity, ripeness, and standing.[2] *Consumer Data Indus. Ass'n v. State of Texas*, No. 21-51038, 2023 WL 4744918, at *1 n.2, *7 (5th Cir. July 25, 2023).

Subsequently, on May 28, 2024, CDIA and the State jointly moved for a stay of this action pending the Consumer Financial Protection Bureau ("CFPB") undertaking "a process to adopt a formal rule interpreting certain provisions of the FCRA and topics related to credit reporting—one of which is medical debt." (Joint Mot. to Stay, Dkt. 72). The Court granted the motion to stay. (Text Order dated May 29, 2024). On November 5, 2025, the parties jointly requested the Court lift the

[2] The Fifth Circuit did not reach the merits of CDIA's preemption argument. *See Consumer Data Indus. Ass'n v. Tex. through Paxton*, No. 21-51038, 2023 WL 4744918, at *1 n.2, *7 (5th Cir. July 25, 2023).

stay in this case; the Court lifted the stay and set a summary judgment briefing schedule as requested by the parties. (Joint Status Report, Dkt. 84; Order, Dkt. 85). CDIA now moves for summary judgment. (MSJ, Dkt. 93).

**B. Legislative History of the FCRA[3]**

The FCRA seeks to promote "fair and accurate credit reporting" and "protect consumer privacy" by regulating the consumer reporting agencies that compile and disseminate personal information. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418 (2021); 15 U.S.C. § 1681(a). By "impos[ing] a host of requirements concerning the creation and use of consumer reports," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 335 (2016), the FCRA seeks to strike a balance between "meeting the needs of commerce for consumer credit, personnel, insurance, and other information" and being "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." *Id.* § 1681(b).

When the FCRA was enacted in 1970, it "generally permitted state regulation of the consumer reporting industry," as its original preemption provision, 15 U.S.C. § 1681t(a), solely preempted state laws to the extent they were "inconsistent with any provision of [the FCRA]." *Ross v. F.D.I.C.*, 625 F.3d 808, 812–13 (4th Cir. 2010); 15 U.S.C. § 1681t(a). Relevant to the instant action, the 1970 version of the FCRA included a prohibition on consumer reports containing "[a]ny . . . adverse item of information which antedates the report by more than seven years"; a similar provision exists in the current version of the FCRA. *Compare* Pub. L. 91–508, 84 Stat. 1127, 1129–30 (Oct. 26, 1970), *with* 15 U.S.C. § 1681c(a)(5).

In 1996, in addition to the preexisting narrow preemption provision in § 1681t(a), Congress added 15 U.S.C. § 1681t(b), entitled "General exceptions." Consumer Credit Reporting Reform Act

[3] The Court may take judicial notice of legislative history. *See Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959).

of 1996 ("CCRRA'"), Pub. L. 104–208, 110 Stat. 3009, 3009–426 to –455. The relevant portion of § 1681t(b) to the instant case provides:

> **(b) General exceptions**
>
> No requirement or prohibition may be imposed under the laws of any States—
>
> (1) with respect to any subject matter regulated under–
> . . .
>
> (E) section 1681c of this title, relating to information contained in consumer reports . . . .

15 U.S.C. § 1681t(b)(1)(E). The CCRRA also renamed the title of § 1681c from "Obsolete Information" to 'Requirements Relating to Information Contained in Consumer Reports." CCRRA, Pub. L. 104–208, 110 Stat. at 3009–435.

Relatedly, the CCRRA included an eight-year sunset provision limiting the preemption provision in § 1681t(b). Under the sunset provision, state statutes that (1) were enacted after January 1, 2004, (2) "state[d] explicitly that the provision is intended to supplement [the FCRA]," and (3) would "give[] greater protection to consumers than is provided under [the FCRA]" would **not** be preempted by the FCRA. CCRRA, Pub. L. 104–208, 110 Stat. 3009–454. According to Representative Joseph P. Kennedy II, a sponsor of the House bill and its earlier iterations that would become the CCRRA, these provisions were a "compromise . . . [that were] the product of a careful effort to balance industry's desire for nationwide uniformity with States' vital interest in protecting their citizens." 140 Cong. Rec. 25866 (Sept. 27, 1994). He emphasized that "[a]fter 8 years, States will be able to enact tougher laws if they choose to do." *Id.* Senator Richard Bryan, a sponsor of the Senate bill and its earlier iterations that would become the CCRRA, asserted:

> As a former attorney general and Governor, I take very seriously States' rights and believe there is a high threshold before State law should be preempted by the Congress. However, when the operation of businesses in interstate commerce can be improved without—and I emphasize "without"—disadvantaging consumers or causing undue harm to State efforts, I believe that Federal uniformity should be tried.

140 Cong. Rec. 8942 (May 2, 1994). Senator Bryan further reasoned that consumers were advantaged by credit reporting agencies not having to meet "50 different forms established by 50 different States." *Id.*

Subsequently, in 2003—prior to the sunset provision going into effect—the United States Senate Committee on Banking, Housing, and Urban Affairs held "six hearings on the issues involving in the reauthorization of the Fair Credit Reporting Act preemptions." S. Hrg. 108–579, at 627, https://perma.cc/NNH3-ZJZ9 (May 20, June 19, 26, July 10, 29, and 31, 2003). Representatives from industry groups, advocacy organizations, and government agencies gave testimony on the issue of preemption. For instance, the Director of the Division of Consumer and Community Affairs, Board of Governors of the Federal Reserve System, testified: "State-specific restrictions on furnishing information to consumer reporting agencies, or on the contents of information contained in consumer reports supplied by consumer reporting agencies, could negatively affect credit availability and increase the cost of credit." *Id.* at 552 (Prepared Statement of Dolores S. Smith). The Director of Advocacy of the American Association of Retired Persons ("AARP") also gave his view that one of the seven federal preemptions enacted in 1996 "prevent[s] States from overriding or changing . . . [t]he information that may be included in consumer reports, including the time during which consumer reporting agencies are permitted to report adverse data," and advocated for allowing the "Federal preemptions to expire as originally intended under the FCRA unless Federal legislation providing greater consumer protections can be enacted." *Id.* at 189, 192, 194 (Statement of Michael W. Naylor).

Later that year, after the House bill (H.R. 2622) and Senate bill (S. 1753) that would become the Fair and Accurate Credit Transactions Act of 2003 (the "FACT Act") were amended in conference, Representative Spencer Bachus—who introduced H.R. 2622—advocated for the conference report by arguing that the "national uniform system has . . . lowered costs and increased

choice and convenience for American consumers" and that "this system could be put in jeopardy if the state law uniform standards in the FCRA were permitted to expire." 149 Cong. Rec. H12217 (Nov. 21, 2003). He therefore advocated for "making these [national] standards permanent." *Id.* That same day, then-Representative Bernard Sanders of Vermont spoke against the repeal of the sunset provision, arguing that it "should be defeated because it preempts States throughout this country from going forward with stronger consumer protections." 149 Cong. Rec. H12217 (Nov. 21, 2003). Congress ultimately did repeal the sunset provision through the FACT Act, making the preemption provisions in § 1681t(b) permanent. FACT Act, Pub. L. No. 108-159 (2003).

### C. Agency Interpretation of the Preemption Provisions

In July 2022, the CFPB under the Biden Administration adopted an interpretive rule (the "July 2022 CFPB rule") stating that § 1681t(b)'s "express preemption provisions have a narrow and targeted scope," such that States "retain substantial flexibility to pass laws involving consumer reporting to reflect emerging problems affecting their local economies and citizens." The Fair Credit Reporting Act's Limited Preemption of State Laws, 87 FR 41042-01, 12 CFR Part 1022, 2022 WL 2644079, at 41042 (July 11, 2022). It points to "[t]he term 'with respect to' [as] indicat[ing] that Congress intended for" § 1681t(b)(1) to not "preempt State laws unless they concern a subject matter regulated **under the enumerated portions of the FCRA**." *Id.* at 41043 (emphasis added). For instance, the CFPB interpreted one of § 1681c's regulated "subject matters" to be "how long specific types of information listed in section 1681c may continue to appear on a consumer report," whereas "what or when items generally may be initially included on a consumer report is **not** a subject matter regulated under section 1681c." *Id.* at 41044 (emphasis added). The CFPB provided as an example that a State law "forbid[ding] a consumer reporting agency from including medical debt in a consumer report for a certain period of time after the debt was incurred . . . would generally not be preempted," as § 1681c "does not regulate the subject matter of when medical debt

(or debt generally) may be first included in a consumer report." *Id.* at 41045. The CFPB acknowledged that "although medical debt information may be 'adverse information' regulated under 1681c((a)(5) . . . that provision regulates only the subject of how long such information may appear on a consumer report, not the content of the information or when such information may initially appear." *Id.*

Subsequently, in October 2025, the CFPB under the second Trump Administration withdrew the July 2022 CFPB rule and adopted a new interpretive rule (the "October 2025 CFPB rule").[4] Fair Credit Reporting Act; Preemption of State Laws, 90 FR 48710-01, 12 CFR Part 1022, 2025 WL 3003357, at 48711. The October 2025 CFPB rule describes § 1681t(b) as a "strong preemption provision" and finds that, rather than the preempted subject matters being based on the enumerated FCRA provision, they are based on the "relating to" clauses in § 1681t(b) (e.g., "section 1681c of this title, **relating to information contained in consumer reports**").[5] *Id.* at 48711–48712 (emphasis added). The October 2025 CFPB rule also summarizes the legislative history of § 1681t(b) and asserts that the history "confirms that Congress intended to broadly displace State laws on consumer reporting." *Id.* at 48713. According to the October 2025 CFPB rule, State laws affecting the "content of a consumer's credit report" could "undermine[]" the "utility of credit reports . . . because lenders would no longer be able to accurately compare consumers across the country." *Id.* at 48715. Accordingly, the October 2025 CFPB rule finds that States are preempted from regulating the "presence of information on a credit report," including medical debt. *Id.*

---

[4] In withdrawing the July 2022 CFPB rule, the October 2025 CFPB rule points out that the FCRA does not authorize the CFPB to "provide its legally binding view[] on preemption." *Id.* The October 2025 CFPB rule itself then provides a view of preemption, while acknowledging that it "has no legally binding effect." *Id.* at 48715.

[5] Conversely, the July 2022 CFPB rule focused on, e.g., "**section 1681c of this title**, relating to information contained in consumer reports."

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a

genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000).

**B. Preemption Principles**

When interpreting a statute, courts are to "follow the 'plain and unambiguous meaning of the statutory language,' interpreting undefined terms according to their ordinary and natural meaning and the overall policies and objectives of the statute." *NPR Invs., L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014) (quoting *United States v. Orellana,* 405 F.3d 360, 365 (5th Cir. 2005)). If a statute is "subject to differing interpretations, the court must 'examine its legislative history, predecessor statutes, [and] pertinent court decisions . . . .'" *Salazar v. Maimon*, 750 F.3d 514, 519 (5th Cir. 2014) (quoting *Rogers v. San Antonio*, 392 F.3d 758, 761 (5th Cir. 2004)).

When determining the existence and reach of preemption in particular, Congress's purpose is the "ultimate touchstone" for determining the existence and reach of preemption. *Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (citing *Medtronic Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Congress can show its purpose either expressly or impliedly "through its structure and purpose." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76–77 (2008). "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Moreover, once a court identifies an express preemption clause, it "does not immediately end the inquiry because the question of the substance and scope of Congress's displacement of state law still remains." *Altria Grp.*, 555 U.S. at 76–77.

Regardless of whether a court is addressing express or implied preemption, courts are to "begin [their] analysis 'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.*

at 77 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)). In line with that assumption, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Id.* (quoting *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005)). Moreover, when Congress has "indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them," the Supreme Court has reiterated that the "case for federal pre-emption is particularly weak." *CTS Corp. v. Waldburger*, 573 U.S. 1, 18 (2014) (quoting *Wyeth v. Levine*, 555 U.S. 555, 574–75 (2009)).

## III. DISCUSSION

CDIA moves for summary judgment on the basis that the FCRA expressly preempts the Texas Statute. (MSJ, Dkt. 93, at 6). Given the content of the Texas Statute, the main preemption provision at issue is § 1681t(b)(1)(E), which provides: "No requirement or prohibition may be imposed under the laws of any State—with respect to any subject matter regulated under—section 1681c of this title, relating to information contained in consumer reports . . . ." According to CDIA, § 1681t(b) should be read as a strong and broad preemption provision, such that any subject matter "relating to information contained in consumer reports" is preempted. (MSJ, Dkt. 93, at 10, 15). CDIA also argues in the alternative that, even if the "subject matter" preempted by § 1681t(b)(1)(E) "is limited to the specific *kinds* of consumer information regulated by § 1681c, [the Texas Statute] would still be preempted," as the Texas Statute "regulates the types of consumer information—adverse information and medical information—that are specifically addressed by § 1681c." (*Id.* at 29). The Court will analyze these arguments in turn.

### A. The "Subject Matter" Preempted by § 1681t(b)(1)(E)

As explained in Section II(B), *supra*, even when Congress uses an express preemption provision, determining the "substance and scope of Congress's displacement of state law still

remains." *Altria Grp.*, 555 U.S. at 76–77. The Court therefore first considers the breadth of § 1681t(b)(1), with an emphasis on the "plain wording of the clause, which necessarily contains the best evidence of Congress's pre-emptive intent." *See CSX Transp., Inc.*, 507 U.S. at 664.

CDIA contends, in line with the October 2025 CFPB rule,[6] that § 1681c's preempted "subject matter" is laws "relating to information contained in consumer reports"—i.e., that the "relating to" clause in § 1681t(b)(1)(E), which is also in the title of § 1681c ("Requirements relating to information contained in consumer reports"), defines the subject matter of § 1681c. (MSJ, Dkt. 93, at 16). It asserts that "by defining the subject matter of § 1681c with reference to consumer reports" in both § 1681t(b)(1)(E) and § 1681c's title, "Congress made doubly clear that the content of consumer reports was the subject matter off-limits to state regulation." (*Id.*). CDIA further reasons that the phrase "with respect to" in § 1681t(b)(1) is "synonymous with 'respecting,'" which Supreme Court precedent states "generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." (*Id.* (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018))). CDIA also asserts that the legislative history of the FCRA—which the Court has supplemented with its own research in Section I(B), *supra*—supports a broad reading of § 1681t(b).[7]

Conversely, Texas argues, in line with the July 2022 CFPB rule, that § 1681c's preempted subject matter solely includes the specific content regulated within § 1681c, rather than the entire

[6] The Court notes the contents of the July 2022 and October 2025 CFPB rules but does not defer to either of their interpretations. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) (holding that courts should not defer to agency interpretations of statutes and must instead "exercise their independent judgment").
[7] CDIA also claims it should be granted summary judgment because this Court has already determined that the Texas Statute is preempted by the FCRA. (MSJ, Dkt. 93, at 7). But the Court merely found at the motion to dismiss stage that "CDIA [] has sufficiently *alleged* that the [Texas Statute] is expressly preempted by Section § 1681t(b)(1)." (Order Denying Mot. to Dismiss, Dkt. 49, at 10) (emphasis added). Moreover, a district court may reconsider prior conclusions of law. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010) (citations omitted) (holding that "the law-of-the-case doctrine does not operate to prevent a district court from reconsidering prior rulings" and that a court "has the power to revisit prior decisions of its own . . . in any circumstance").

area of "information contained in consumer reports." (Resp., Dkt. 96, at 15–16). And it cites a dissent written by Justice Scalia in which he asserted that the phrase "with respect to" "massively limit[ed] the scope of preemption," rather than broadening it. (*Id.* at 15 (quoting *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 449 (2002) (Scalia, J., dissenting))). Texas cites for support the First Circuit's decision in *Consumer Data Industry Association v. Frey*, in which that court reasoned:

> We are not persuaded by CDIA's argument that Section 1681t(b)(1)(E) preempts all state laws "relating to information contained in consumer reports," regardless of whether they regulate subject matter regulated by Section 1681c. . . . Congress drafted the line breaks in the statute so that a sentence describing what was preempted as well as the phrase "subject matter regulated under" would be completed by reference to a statutory section or subsections, suggesting that it wanted to give the statutory references a functional role in describing the regulated "subject matter[."] The "relating to" clause can be plausibly read either as purely descriptive of the content of the statutory provisions or as modifying "subject matter" jointly with "regulated under section 1681c." In either case, though, the effect is the same: the content of the statutory provision plays a functional role in defining the scope of the subject matter preempted. By contrast, CDIA's proposed interpretation—which treats the phrase "subject matter" as defined only by the phrase "relating to"—renders the entire phrase, "regulated under section 1681c" surplusage.

26 F.4th 1, 6–7 (1st Cir. 2022). Finally, Texas also reasons that Congress leaving in the narrow preemption provision located in § 1681t(a) when it amended the FCRA is proof that Congress "did not intend to generally preempt the entire field of consumer reporting laws." (*Id.* at 12).

After reviewing the text of the relevant FCRA provisions and the parties' briefing, the Court agrees with the First Circuit that interpreting § 1681t(b)(1)(E) as preempting *any* state law involving "information contained in consumer reports" is not supported by the plain text of the statute, as doing so would require ignoring Congress's choice to reference § 1681c. *See Frey*, 26 F.4th 1, 6–7. *See also Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 445 (2d Cir. 2015) (interpreting § 1681t(b)(1)(F) as "preempt[ing] *only* those claims against furnishers that are 'with respect' to the subject matter regulated under § 1681s-2") (emphasis in original); *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1235–36 (9th Cir. 2023) (agreeing with the Second Circuit in *Galper* that

§ 1681t(b)(1)(F)'s preemptive effect is "limited by the requirements imposed by § 1681s-2"). Given that it is "a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute," *Williams v. Taylor*, 529 U.S. 362, 404 (2002), the Court will not ignore Congress's use of the phrase "regulated under section 1681c."[8] *See also Easterwood*, 507 U.S. at 664 (instructing that courts construing a preemption clause should "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent"); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 551 (2001) (quoting *Cipollone*, 505 U.S. at 524) (stating that "each phrase within [the provision] limits the universe of [state action] pre-empted by the statute").

Because the Court has found that the subject matter preempted by § 1681t(b)(1) is dependent upon the specific provisions within § 1681c, the Court will next consider whether the Texas Statute is within "any subject matter regulated" under § 1681c.

**B. The Texas Statute's Relation to § 1681c's Subject Matters**

Section 1681c provides that "no consumer reporting agency may make any consumer report containing," *inter alia*, (1) adverse information, other than records of convictions of crimes, which antedate the report by more than seven years;[9] (2) the "name, address, and telephone number of any medical information furnisher that has notified the agency of its status, unless" certain

---

[8] The Court finds that this interpretation of § 1681t(b)(1) is also supported by the Supreme Court's instruction to give express preemption clauses "a fair but narrow reading." *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 524 (1992). Additionally, in light of Congress's decision to maintain the language in § 1681t(a)—that the FCRA does *not* "exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers . . . except to the extent that those laws are inconsistent with any provision of this subchapter"—Congress has "indicated its awareness of the operation of state law in a field of federal interest," such that the very broad reading of § 1681t(b) suggested by CDIA does not appear in line with Congress's purpose. *See CTS Corp.*, 573 U.S. at 18 (holding that the "case for federal pre-emption is particularly weak" where Congress has "indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them").

[9] The Court notes that "'there is a simple scrivener's error' in Section 1681c(a)(5)." *See Frey*, 26 F.4th at 10 n.5 (*quoting Moran v. Screening Pros., LLC*, 943 F.3d 1175, 1183 n.6 (9th Cir. 2019)). "Thus, a comma should be included to separate the exclusionary clause as follows, 'Any other adverse item of information, other than records of convictions of crimes[,] which antedates the report by more than seven years.'" *Id.* (quoting *Moran*, 943 F.3d at 1183 n.6)).

confidentiality requirements are met; or (3) information "related to a veteran's medical debt" until one year following the date the relevant medical services were rendered or if the debt is "fully paid or settled." 15 U.S.C. § 1681c(a)(5)–(8). CDIA contends that the Texas Statute concerns the same "subject matter regulated under" these four subparagraphs of § 1681c, such that the Texas Statute is preempted. (MSJ, Dkt. 93, at 7, 29–30).

Texas responds that § 1681c "only regulates medical information by prohibiting disclosure of identifying information from medical information providers unless coded to protect privacy, and certain veteran medical debts. 15 U.S.C. § 1681c(a)(6-8) Thus, it does not preempt [the Texas Statute,] which provides for the exclusion of medical debt information under circumstances not addressed by 15 U.S.C. § 1681c." (Resp., Dkt. 96, at 16). Notably, however, Texas does not respond to CDIA's argument that the medical debt information Texas seeks to omit from consumer reports falls within the subject matter of § 1681c(a)(5), "[a]ny other adverse item of information." Nevertheless, the Court will independently consider whether the Texas Statute regulates adverse items of information.

**i. Section 1681c(a)(5)**

CDIA contends that the "'other' language" in "[a]ny *other* adverse item of information," § 1681c(a)(5), "is a plain indication that the consumer information regulated by § 1681c(a) can be generally categorized as 'adverse item[s] of information.'" (MSJ, Dkt. 93, at 29). According to CDIA, the Texas Statute "concerns the same subject matter because it purports to enact additional prohibitions on a particular type of adverse information: medical debt owed to out-of-network providers after certain required consumer payments." (*Id.*). Notably, Texas does not respond to this argument.[10]

---

[10] Indeed, the word "adverse" does not appear in Texas's Response, nor does Texas ever cite to § 1681c(a)(5).

The First Circuit in *Frey* found that, "[m]easuring the reach of preemption, Section 1681c(a)(5) points to age," as it "prohibits consumer reporting agencies from reporting adverse information that is more than seven years old. Correspondingly, agencies may report that information, provided it does not predate the report for more than seven years. But they are not required to." *Frey*, 26 F.4th at 11. The First Circuit then stated that CDIA in that action had "not developed any argument" as to how the State statute at issue there "might trench on this more circumscribed 'subject matter,'—i.e., the 'items of information' listed in Section 1681c(a)" and therefore remanded to the District of Maine to determine "whether or to what extent [§ 1681c] partially preempt[ed]" the Maine statute at issue. *Id.* at 11, 14.

The Court finds that both CDIA's interpretation and the First Circuit's interpretation are reasonable. As the District of Maine found on remand, the subject matter under these subparagraphs could be read to be limited to "accounts and information that is more than seven years old." *See Consumer Data Indus. Ass'n v. Frey*, 710 F. Supp. 3d 73, 79 (D. Me. 2024) (finding on remand that "the subject matters in question are certain categories of information that are more than seven years stale"). That court reasoned that the "mere fact that Section 1681c lists 'items of information' that reporting agencies may not report, 15 U.S.C. § 1681c(a), should not be interpreted as a congressional desire to remove from the field of state regulation all reporting concerning similar information not so prescribed, which regulation is simultaneously, expressly anticipated and permitted by Congress in Section 1681t(a)." *Id.* However, based on § 1681t(b)'s broad language that "*any* subject matter" regulated under § 1681c is preempted, it would also be reasonable to find that Congress had intended to preempt any statutes regarding the reporting of adverse information on consumer reports. The Court therefore finds that the "subject matter" of § 1681c is ambiguous, such that it is appropriate to look to the legislative history to confirm Congress's intended meaning. *See U.S. v. Hoang*, 636 F.3d 677, 682 (5th Cir. 2011) (quoting *In re Condor Ins. Ltd.*, 601 F.3d 319, 321

(5th Cir. 2010)) ("It is familiar learning that '[a] statute is ambiguous if it is susceptible to more than one reasonable interpretation or more than one accepted meaning.'"); *Salazar*, 750 F.3d at 519 (quoting *Rogers*, 392 F.3d at 761) (holding that courts "must 'examine [a statute's] legislative history, predecessor statutes, [and] pertinent court decisions" if the statute is "subject to differing interpretations").

The Court finds most instructive three pieces of legislative history: (1) the FCRA originally only preempted State laws inconsistent with the FCRA, § 1681t(a), but Congress added § 1681t(b) in 1996 in line with "industry's desire for nationwide uniformity";[11] (2) Congress's initial inclusion of a sunset provision for § 1681t(b)'s added preemption provisions, such that States would be permitted to enact legislation to "give[] greater protection to consumers than is provided under [the FCRA]," CCRRA, Pub. L. 104–208, 110 Stat. 3009–454;[12] and (3) Congress's 2003 decision to *repeal* the sunset provision, supported by individuals advocating for making the national standard permanent and opposed by individuals who wished to allow States to "go[] forward with stronger consumer protection."[13] Neither the First Circuit in *Frey*, nor the District of Maine on remand, grappled with the legislative history regarding the sunset provision and its subsequent repeal, yet the Court finds this legislative history to be strong evidence of Congress's intent: to expressly preempt state laws

[11] *See* 140 Cong. Rec. 25866 (Sept. 27, 1994) (Representative Joseph P. Kennedy II, a sponsor of the bill, explaining that the preemption provisions and sunset provision were a "compromise . . . [that were] the product of a careful effort to balance industry's desire for nationwide uniformity with States' vital interest in protecting their citizens").

[12] *See id.* (Representative Kennedy emphasizing that "[a]fter 8 years, States will be able to enact tougher laws if they choose to do").

[13] *See* S. Hrg. 108–579, at 552 (statement of the Director of the Division of Consumer and Community Affairs for the Federal Reserve System, testifying that "[s]tate-specific restrictions on . . . the contents of information contained in consumer reports supplied by consumer reporting agencies, could negatively affect credit availability and increase the cost of credit."); *id.* at 192, 194 (statement of the Director of Advocacy for AARP advocating for allowing the federal preemptions to expire and describing one the preemptions as relating to the "information that may be included in consumer reports, including the time during which consumer reporting agencies are permitted to report adverse data"); 149 Cong. Rec. H12217 (Nov. 21, 2003) (Representative Sanders advocating against repealing the sunset provision "because it preempts States throughout this country from going forward with stronger consumer protections").

regarding the inclusion of adverse items of information in consumer reports. Congress initially *did* mean to allow supplementation by States (i.e., State laws more protective of consumers)—beginning only in 2004—but by 2003, Congress determined that national uniformity was a superior method of regulation. The Court therefore disagrees with the First Circuit's statement that it "see[s] no reason to presume that Congress intended, in providing some federal protection to consumers regarding the information contained in credit reports, to oust all opportunity for states to provide more protections, even if those protections would not otherwise be preempted as 'inconsistent' with the FCRA as under 15 U.S.C. § 1681t(a)." *See Frey*, 26 F.4th at 9. Rather, the legislative history explicitly supports that Congress *did* intend to block States from enacting greater protections in "any subject matter" regulated by § 1681c, and that Congress intended for § 1681c's subject matter to be, *inter alia*, adverse items of information.

Furthermore, the Court is also persuaded that the addition of § 1681t(b) is strong evidence that Congress intended to go farther than merely preventing States from passing laws inconsistent with the specific provisions of § 1681c. If all § 1681t(b) did was prevent States from enacting legislation that, for example, conflicted with the FCRA's seven-year "age limit" on adverse items of information (e.g., provided a five-year "age limit"), then that inconsistency would **already** have been prohibited by § 1681t(a). Surely Congress thought it was making a change when it amended the FCRA to add § 1681t(b). *See United States v. Quality Stores, Inc.*, 572 U.S. 141, 148 (2014) (quoting *Stone v. INS*, 514 U.S. 386, 397 (1995)) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."). The 1996 amendment therefore supports a broader reading of what Congress intended to preempt through § 1681c(a)(5) and § 1681t(b).

Thus, based on the legislative history of § 1681t, the Court finds that the best interpretation of § 1681c and § 1681t(b) is that Congress intended to preempt States from passing legislation more protective of consumers in relation to adverse information on their consumer reports—which

includes the reporting of medical debt. Of course, there is nothing in the FCRA preventing the consumer reporting agencies from *choosing* to not report certain adverse information that is "younger" than seven years old, but Congress determined that the cost of State-by-State restrictions on what adverse information could be reported would be detrimental to the "national uniform system." *See* 149 Cong. Rec. H12217 (Nov. 21, 2003) (statement of Representative Bachus). Though the Court is sympathetic to Texas's desire to protect its citizens from unexpected medical debt and incorrect medical bills, (*see* Resp., Dkt. 96, at 6–8), the Court "cannot overrule Congress's judgment based on [its] own policy views." *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 345 (2017). Accordingly, under § 1681c(a)(5) and § 1681t(b), the Texas Statute—which would prohibit consumer reporting agencies from including certain medical debt information in consumer reports—is preempted.

**ii. Section § 1681c(a)(6), (a)(7), and (a)(8)**

The Court briefly touches on whether the Texas Statute is also preempted by § 1681c(a)(6), (a)(7), and/or (a)(8). The District of Maine found on remand in *Frey* that Sections 1681c(a)(6) "reflects Congress's intention to ensure that reporting agencies do not disclose confidential medical information in their reports . . . if disclosure would enable someone reading the report to deduce the nature of the medical services rendered. 15 U.S.C. § 1681c. This is a narrowly tailored provision that was not intended to preempt the entire field of reporting requirements related to medical information." *Frey*, 710 F. Supp. 3d at 80. The Court agrees. The plain text of § 1681c(a)(6) demonstrates that Congress solely intended to regulate regarding the confidentiality of medical information, with no regard to how or when medical debt could be reported. Section § 1681c(a)(6) therefore does not preempt the Texas Statute.

The Court does agree with its own prior finding, however, that "any subject matter" regulated by § 1681c(a)(7) and (a)(8)—which prohibit reporting of certain types of veterans' medical

debt—includes medical debt. (Order Denying Mot. to Dismiss, Dkt. 49, at 10–11). In making that finding, the Court agreed with the District of Maine, which was later reversed by the First Circuit, that "[t]o be clear, a regulation of veteran's medical debt is a regulation of medical debt. To hold otherwise, and to say that a regulation within a subject matter is not a regulation of a subject matter, would lead to untenable outcomes when applied to the rest of § 1681c." (*Id.* (quoting *Consumer Data Indus. Ass'n v. Frey*, 495 F. Supp. 3d 10, 20-21 (D. Me. 2020)). Though the First Circuit disagreed, *Frey*, 26 F.4th at 12, this Court does not. Congress chose to regulate within the subject matter of medical debt, and it chose to **only** prohibit reporting certain types of veterans' medical debt, thereby allowing consumer reporting agencies to report non-veterans' medical debt. A State law prohibiting the reporting of such medical debt would tread upon "any subject matter regulated under" § 1681c and would thus tread upon the national uniform system enacted by Congress. Accordingly, § 1681c(a)(7) and (a)(8) also preempt the Texas Statute.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that CDIA's Motion for Summary Judgment, (Dkt. 93), is **GRANTED** in part,[14] such that the Court **DECLARES** Texas Business & Commerce Code § 20.05(a)(5) is expressly **PREEMPTED** by 15 U.S.C. § 1681t(b)(1)(E), as § 20.05(a)(5) impermissibly attempts to enact a requirement or prohibition in a subject matter regulated under 15 U.S.C. § 1681c.

**IT IS FURTHER ORDERED** that Defendant State of Texas, through Ken Paxton, in his official capacity as Attorney General, and his agents, employees, and successors in office are permanently **ENJOINED** from enforcing Texas Business & Commerce Code § 20.05(a)(5).

The Court will enter final judgment by separate order.

**SIGNED** on August 10, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

[14] The Court considers this Order as granting the MSJ only in part because the Court declines to find, as requested by CDIA, that § 1681t(b)(1)(E) preempts any State law "relating to information contained in consumer reports" without regard to the specific content of § 1681c.